776 A.2d 874 (2001)
342 N.J. Super. 351
Lucy MOSCATELLO, individually and as Guardian Ad Litem for John MOSCATELLO, Jr., Carl Moscatello, Christina Moscatello, and John James Moscatello, individually, Plaintiffs-Appellants,
v.
UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, Ming-Liang Lee, M.D., Leonard Sciorra, Ph.D., Seymour Gelzer, Esq. and Brigiani, Gelzer Cohen & Schneider, P.A., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 2001.
Decided June 21, 2001.
*876 Bruce H. Nagel argued the cause for appellants (Nagel, Rice, Dreifuss & Mazie, attorneys; Mr. Nagel and Robert H. Solomon of counsel and on the brief).
Laurie H. Pilling argued the cause for respondents Seymour Gelzer and Brigiani, Gelzer, Cohen & Schneider (Amdur, Boyle, Maggs & McGann, attorneys; Richard A. Amdur of counsel; Elizabeth A. Wilson on the brief).
Karen A. Jordan, Deputy Attorney General, argued the cause for respondents University of Medicine and Dentistry of New Jersey, Ming Liang Lee, M.D., Leonard Sciorra, Ph.D.; (John J. Farmer, Jr., Attorney General; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Jordan on the brief).
Before Judges KEEFE, EICHEN and WEISSBARD.
*875 The opinion of the court was delivered by KEEFE, P.J.A.D.
This appeal requires that we decide whether a wrongful birth settlement by the parents of a child born with disabilities extinguished the disabled child's wrongful life claim for extraordinary medical expenses; whether a child born with disabilities may include in his claim for wrongful life damages for the loss of enjoyment of life, including his diminished childhood; whether an action for wrongful birth extends to the siblings of a child born with disabilities; and whether the attorneys representing the parents at the time of the settlement were entitled to summary judgment on all of the legal malpractice claims.
The Law Division granted summary judgment to all defendants on all issues and plaintiffs appeal. We now hold that the parent's settlement did not extinguish the disabled child's claim for extraordinary medical expenses; the disabled child cannot maintain a claim for loss of enjoyment of life or diminished childhood; the siblings may not bring a wrongful birth claim; and the parents' attorneys were only entitled to partial summary judgment. Accordingly, the judgment under review is affirmed in part, reversed in part, and remanded for further proceedings.
In November 1978, Lucy Moscatello was referred to defendant, Dr. Lee, at the University *877 of Medicine and Dentistry of New Jersey ("UMDNJ") for chromosomal and genetic testing. The referral was made because she had suffered three consecutive spontaneous miscarriages in 1977 and 1978. Lee, who at the time was an Associate Professor of Pediatrics at UMDNJ and Chief of its Division of Medical Genetics, performed an internal examination and a number of blood tests. These tests were analyzed by defendant Sciorra. Thereafter, Lee informed Lucy that she was genetically normal.
Following the genetic testing, Lucy became pregnant. On March 25, 1980, she gave birth to plaintiff Christina, a normal baby girl. Thereafter, she became pregnant again. On April 4, 1982, she gave birth to plaintiff John Jr., who was born with various physical deformities associated with chromosomal abnormalities.
As a result, in the spring of 1982, genetic testing was performed at Babies Hospital, a part of the Columbia-Presbyterian Medical Center in New York, which revealed that John Jr. was born with a partial trisomy of chromosome 14 and a partial deletion of chromosome 18. This is a rare disorder. In fact, in 1984 there were only six documented cases in the medical literature. Unfortunately, one of the six cases was Lucy's cousin. The cousin is severely mentally retarded and has only a ten word vocabulary. He is ambulatory but has some spasticity of his limbs. He is, however, able to feed, dress himself, and participate in vocational programs.
In contrast, John Jr. is virtually unable to care for himself. His mother has certified that as a result of the genetic deformities, he is not toilet trained, and his verbal and nonverbal communication skills are severely limited. He has difficulty holding and carrying objects, as well as difficulty feeding himself. In sum, John Jr. functions on the level of someone approximately two years old.
Genetic testing revealed that Lucy has a balanced rearrangement between chromosome 14 and 18. The doctor's report explained that the condition was no threat to her health "because the rearrangement is balancedno chromosomal material is missing or extraonly rearranged." However, because of her genetic deformities, the Columbia Presbyterian doctors recommended that any future pregnancies be monitored by amniocentesis.
On February 22, 1983, defendant Seymour Gelzer, Esq., filed a complaint on behalf of Joseph and Lucy Moscatello in the Law Division, naming as defendants UMDNJ, Lee, as well as three fictitious defendants. The complaint was later amended to include Sciorra as a defendant. The complaint included two counts. The first count alleged that the medical defendants negligently reported the Moscatellos "to be genetically normal and capable of having children," despite the fact that Lucy possessed an "abnormal chromosomal structure which made it probable that any children mothered by her would not in fact be born normal." The Moscatellos sought damages for the mental and emotional anguish resulting from the malpractice. The second count of the complaint sought damages for John Jr.'s past and future medical care.
On November 27, 1984, the parties settled their dispute and placed the settlement on the court record. Mr. Gelzer stated that the plaintiffs were settling the claim for their "emotional losses" as a result of John Jr.'s birth, and "for the cost of extraordinary medical expenses incurred or to be incurred on behalf of John Moscatello [Jr.] to be borne by the parents." The settlement was for "the aggregate sum of $375,000." The Deputy Attorney General representing the defendants *878 added: "[T]his settlement covers all current claims that John Moscatello, Jr. could assert under existing law." The judge, however, was not asked to approve the settlement. An order dismissing the suit with prejudice was entered on the same day. John and Lucy Moscatello thereafter executed releases in accord with the settlement. The State issued a check on January 31, 1985, made payable to "John James Moscatello and Lucy C. Moscatello his Wife and their attorney Seymour Gelzer, Esq." in the amount of $375,000.
Nearly fourteen years later, on November 5, 1997, plaintiffs' current attorney filed the subject complaint in the Law Division. The first count of the complaint is a wrongful birth claim on behalf of Lucy and a wrongful life claim on behalf of John Jr. It alleges negligence by Lee and Sciorra, as well as a claim for respondeat superior liability against UMDNJ. The second and third counts of the complaint contain wrongful birth claims brought by John Jr.'s siblings, Christina and Carl, alleging that they have "suffered damages including but not limited to diminished childhood and emotional anguish over [their] brother's severe mental and physical deformities." The fourth and fifth counts of the complaint allege that the Gelzer defendants committed legal malpractice in the 1984 action by negligently advising the Moscatello's to settle their claim for a "woefully inadequate amount" and that if "this court deems the child's claim for damages was waived due to the settlement, defendants were negligent in failing to amend the complaint to include the child's wrongful life cause of action."
The defendants filed answers and engaged in discovery. Thereafter, defendants moved for summary judgment on diverse grounds. The Law Division judge dismissed the siblings' claim for wrongful birth as not cognizable under extant case law. He also found that the record clearly proved that John and Lucy Moscatello intended to settle the claim for John Jr.'s lifetime extraordinary medical expenses. Accordingly, he found that John Jr.'s claim for extraordinary medical expenses was barred by that settlement. To the extent that John Jr. had an independent claim, the judge found that it was barred by the entire controversy doctrine. As to the legal malpractice claim, the judge opined that the sum of $375,000 was not "remotely shocking," in light of the disputed liability in the case and the fact that most, if not all, of the medical expenses were not actually paid by plaintiffs.[1]

I.
First, we address John Jr.'s claim for wrongful life damages. The Supreme Court has explained that "[t]he terms `wrongful birth' and `wrongful life' are but shorthand phrases that describe the causes of action of parents and children when negligent medical treatment deprives parents of the option to terminate a pregnancy to avoid the birth of a defective child." Procanik by Procanik v. Cillo, 97 N.J. 339, 347, 478 A.2d 755 (1984). The wrongful birth claim belongs to the parent, whereas the wrongful life claim belongs to the child him or herself. Id. at 348, 478 A.2d 755.
The New Jersey Supreme Court first recognized the validity of the child's wrongful life claim in Procanik where a *879 child born with congenital rubella syndrome was permitted to recover the cost of his extraordinary medical expenses. Id. at 354, 478 A.2d 755. The ruling in the case is unambiguous: "we hold that a child or his parents may recover special damages for extraordinary medical expenses incurred during infancy, and that the infant may recover those expenses during his majority." Id. at 352, 478 A.2d 755. It is unmistakable that the Court intended to create a separate claim to be brought by the disabled child. The Court remarked that "Peter's, [the child's], right to recover the costs of his health care is separate from his parent's claim[.]" Id. at 356, 478 A.2d 755. It is important to note that wrongful birth and wrongful life claims for extraordinary medical expenses overlap. Both the parents and the child may recover for these expenses during the child's infancy, but only the child may recover for them during majority. Id. at 352, 478 A.2d 755.
The validity of the wrongful life cause of action in New Jersey has been reaffirmed on several occasions since the Procanik decision. See, e.g., Michelman v. Ehrlich, 311 N.J.Super. 57, 63, 709 A.2d 281 (App.Div.), certif. denied, 156 N.J. 405, 719 A.2d 637 (1998); McKenney v. Jersey City Medical Center, 330 N.J.Super. 568, 572, 750 A.2d 189 (App.Div.2000), rev'd on other grounds, 167 N.J. 359, 771 A.2d 1153 (2001).
In the instant case, John Jr. has alleged that the UMDNJ defendants' negligently performed genetic testing on his mother, thereby mistakenly telling her that she was not at a risk to bear genetically disabled children. Lucy relied on this diagnosis, causing her to bring John Jr. to term despite his genetic deficiencies. As a result, John Jr. has and will continue to incur extraordinary medical expenses beyond his majority. Thus, he has established a factual basis for a wrongful life claim.
Importantly, Procanik was decided three months before the Moscatellos settled the first complaint. Therefore, at the time of the settlement, John Jr. had been given a right that was "separate" from his parents' claim for extraordinary medical expenses. The parties were charged with knowledge of all relevant law applicable to the matter in dispute, which, of course included knowledge of John Jr.'s separate right.
A child's separate claim for tort damages cannot be prosecuted except by a guardian ad litem, who is most often a natural parent. R. 4:26-2; Bauer v. Griffin, 104 N.J.Super. 530, 547, 250 A.2d 603 (Law Div.1969), aff'd, 108 N.J.Super. 414, 261 A.2d 667 (App.Div.), certif. denied, 56 N.J. 245, 265 A.2d 701 (1970). There was, however, no attempt to amend the 1983 complaint to assert a claim on John Jr.'s behalf through a guardian ad litem. Therefore, it cannot be said that John Jr. was a party bound by the proceedings. Further, the State cannot complain about his absence. Because John Jr. was a necessary party to resolve the entire claim for extraordinary medical expenses, the defendants could have moved to join him, and also moved for the appointment of a guardian ad litem if necessary. R. 4:28-1; R. 4:26-2(b)(3). No such motion was made even though counsel for the defendants asserted his intention to preclude any claim that John Jr. might have.
This is not a pro forma requirement. We have noted that "[i]t is long out of doubt that a parent or appointed guardian cannot dispose of a child's cause of action without statutory authority or judicial approval." Colfer v. Royal Globe Ins. Co., 214 N.J.Super. 374, 377, 519 A.2d 893 (App.Div.1986). This is so even in circumstances where the court has appointed a *880 guardian ad litem for the child. Ibid. The Court rules provide:
All proceedings to enter a judgment to consummate a settlement in matters involving minors and incompetents shall be heard by the court without a jury. The court shall determine whether the settlement is fair and reasonable as to its amount and terms ... If the court approves the settlement it shall enter an order reciting the action taken and directing the appropriate judgment in accordance with R. 4:48A.
[R. 4:44-3.]
The importance of such a proceeding is that once "the judge approves the amount and allocation of the settlement figure, the fully represented infant is bound by the settlement just as if he or she was an adult." Riemer v. St. Clare's Riverside Med. Ctr., 300 N.J.Super. 101, 111, 691 A.2d 1384 (App.Div.), certif. denied, 152 N.J. 188, 704 A.2d 18 (1997). "The purpose of the rule is not only to guard a minor against an improvident compromise but also to secure the minor against dissipation of the proceeds." Colfer, supra, 214 N.J.Super. at 377, 519 A.2d 893.
The defendants in this case can take little solace in the fact that John Jr.'s parents intended to settle for extraordinary medical costs beyond John Jr.'s majority. The law simply does not permit a parent to settle a child's claim without judicial approval, regardless of whether suit has been filed on behalf of the child. Ibid; Reo v. U.S. Postal Service, 98 F.3d 73, 76 (3d Cir.1996). In Colfer, we explained:
[O]ne who pays the parents to settle a minor's claim without judicial approval or statutory authority remains liable to the minor, and takes the risk that the parents' indemnification agreement may be an empty guarantee. As between a minor with a dissipated claim and an insurer which could have guarded against the danger of multiple payments, our choice is not a difficult one.
[214 N.J.Super. at 378, 519 A.2d 893.]
The fact that there was evidence in Colfer that the child received no benefit from the settlement proceeds, while there is no such evidence in this case is of no moment. The holding in Colfer did not turn on that fact. The point is that in the current case the settlement proceeds were not allocated between emotional distress damages, which were solely the property of the parents; the extraordinary medical care incurred to the date of the settlement, for which the parents could have been reimbursed; and the projected medical costs, which could have been set aside for John Jr.'s benefit.
It is clear, however, that the Supreme Court wanted to assure defendants that double recovery for extraordinary medical expenses would not be permitted. And for that reason, the Court said: "[r]ecovery of the cost of extraordinary medical expenses by either the parents or the infant, but not both, is consistent with the principle that the doctor's negligence vitally affects the entire family." Procanik, supra, 97 N.J. at 351, 478 A.2d 755; Michelman, supra, 311 N.J.Super. at 66, 709 A.2d 281. Thus, as we implied in Colfer, in order to avoid double recovery by John Jr., it is possible for the defendants to seek credit for some part of the 1984 settlement paid to John Jr.'s parents, to the extent that it can be shown how much of the proceeds of the settlement were actually used, or set aside, for John Jr.'s benefit.
Finally, we hold that the entire controversy doctrine was not available to defendants as a defense for John Jr.'s separate claim for extraordinary medical expenses. In the first place, when the 1984 settlement was arrived at, the entire *881 controversy doctrine was viewed as a mandatory joinder of claims doctrine. Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 555-57, 428 A.2d 1254 (1981). It was not until 1989, that the doctrine was broadened to add the requirement that all parties, as well as all claims resulting from a single transaction, be joined together in a single action. See Cogdell v. Hospital Center at Orange, 116 N.J. 7, 26, 560 A.2d 1169 (1989). The rule announced by Cogdell was made prospective. Id. at 28, 560 A.2d 1169. Accordingly, the doctrine could not be applied, even if otherwise relevant, to a cause of action settled in 1984. In addition, we held in Riemer, supra, that the entire controversy doctrine could not be used to bar a subsequent claim brought by a minor in a medical malpractice action where the minor settled with the hospital in a former case, but the settlement had not been approved by a court. 300 N.J.Super. at 110, 691 A.2d 1384.
In conclusion, John Jr.'s claim for wrongful life, to the extent that it seeks damages for extraordinary medical care, is reinstated and the matter is remanded for further proceedings.

II.
In addition to the reinstatement of his claim for extraordinary medical expenses, John Jr. also seeks to recover for "loss of enjoyment of life[,] including his diminished childhood." His argument relies principally on this court's decision in Eyoma v. Falco, 247 N.J.Super. 435, 589 A.2d 653 (App.Div.1991), which was decided subsequent to Procanik. In that malpractice case, we held that loss of enjoyment of life damages were "a separate and distinct item of damages," and they were recoverable even though the victim of defendant's negligence "may be in a comatose state." Id. at 445-46, 589 A.2d 653. That was so because such damage is "a loss that is inseparable from [disability and impairment] and is not dependent on the ability to appreciate one's own restrictions." Id. at 452, 589 A.2d 653. Loss of enjoyment of life damages represent "compensation for the interruption of mental and physical functions," and "inability to carry on activities and pursuits," or "the real personal joy and pleasure that the comatose victim might otherwise have experienced." Id. at 452-53, 589 A.2d 653. In that respect, loss of enjoyment of life damages are different from pain and suffering damages, which are compensable only if they are consciously suffered. Ibid. In John Jr.'s view, Eyoma represents "the expanding nature of allowable damages in tort cases," and as such its rationale should be applied in this case.
We have no quarrel with John Jr.'s interpretation of Eyoma, or the attractiveness of his argument. We are, however, powerless to grant him the relief that he seeks. As an intermediate appellate court, we are bound by the holdings of our Supreme Court where it has spoken clearly on a subject. In re Grand Jury Proceedings of Guarino, 104 N.J. 218, 244, 516 A.2d 1063 (1986). In matters pertaining to wrongful life claims, the Court has clearly defined the parameters of recovery. See Procanik, supra, 97 N.J. at 351, 478 A.2d 755.
A claim for loss of enjoyment of life, although different from a claim for pain and suffering, is indistinguishable from a diminished childhood claim. Indeed, John Jr.'s brief treats them as interchangeable concepts. He states in his brief: "As a result of Eyoma and the expanding nature of allowable damages in tort cases, John Jr. should be allowed to recover for loss of enjoyment of life including his diminished childhood." The Supreme Court in Procanik, however, stated that: "the infant's *882 claim for pain and suffering and for a diminished childhood presents insurmountable problems." 97 N.J. at 353, 478 A.2d 755. Observing that the infant plaintiff in that case "never had a chance of being born as a normal, healthy child," and "[t]ragically, his only choice was a life burdened with his handicaps or no life at all," the court, nonetheless, rejected his claim for diminished life damages. Id. at 353, 478 A.2d 755. Accordingly, the child's wrongful life claim was limited to the recovery of extraordinary medical expenses. Id. at 356, 478 A.2d 755. The Court recognized the limitations on a wrongful life cause of action again in Hummel v. Reiss, which was decided fifteen months after Eyoma. 129 N.J. 118, 119, 608 A.2d 1341 (1992).
Therefore, we conclude that only the Supreme Court can expand the damages recoverable in a wrongful life cause of action. We affirm the Law Division's order to the extent that it dismissed John Jr.'s claim for loss of enjoyment of life and diminished childhood damages.

III.
Plaintiffs next argue that the Law Division erred in dismissing Christina's and Carl's wrongful birth claims. Although acknowledging that a cause of action brought by siblings premised on the wrongful birth of a disabled sibling has not been recognized in this jurisdiction, plaintiffs contend "[i]t is now time to breathe life into the legal principles espoused in Berman, Schroeder, and Procanik."[2] We disagree and affirm.
In Procanik, the Court defined a wrongful birth claim as "the cause of action of parents who claim that the negligent advice or treatment deprived them of the choice of avoiding conception or ... terminating the pregnancy." 97 N.J. at 348, 478 A.2d 755. Yet, despite that narrow definition of the cause of action, plaintiffs seize on the following brief passage from Procanik to argue for the expansion of the cause of action:
When a child requires extraordinary medical care, the financial impact is felt not just by the parents, but also by the injured child. As a practical matter, the impact may extend beyond the injured child to his brothers or sisters. Money that is spent for the health care of one child is not available for the clothes, food or college education of another child.
[Id. at 351, 478 A.2d 755 (emphasis added in plaintiffs' brief).]
That passage, however, was not written to suggest that, on another day in another case, the Court might entertain an action by siblings for damages in their own right. Rather, it preceded and was the essential underpinning of the Court's rationale for allowing the recovery of extraordinary medical expenses. The sentence immediately succeeding the quoted passage relied upon by plaintiffs clarifies its meaning: "Recovery of the cost of extraordinary medical expenses by either the parents or the infant, but not both, is consistent with the principle that the doctor's negligence vitally affects the entire family." Ibid. (emphasis added). In the discussion that followed, the Court rejected the infant plaintiff's claim for damages beyond extraordinary medical expenses, for reasons discussed earlier in this opinion. Id. at 353-355, 478 A.2d 755. It seems unlikely *883 to us that the same Court that denied diminished childhood damages to a disabled child, based on the argument that "parents are less able to love and care for the child in such circumstances," would permit siblings to recover damages for diminished childhood relying on the same rationale. Id. at 354, 478 A.2d 755.
The only reported New Jersey case which discusses a wrongful birth claim brought by a party other than a parent is Michelman, supra, 311 N.J.Super. at 57, 709 A.2d 281. In that case, the grandfather of a child born with Tay-Sachs disease, attempted to recover emotional distress damages for his grandson's wrongful birth. Id. at 60, 709 A.2d 281. We rejected that claim essentially for the reason that the doctor's duty to diagnose the mother's condition so as to avoid fetal abnormalities could not, as a matter of logic, extend beyond the parents. Id. at 69, 709 A.2d 281. We explained:
It serves no purpose of tort law to extend the duty to grandparents who have no patient/doctor relationship, have no power to act on the information that is the subject of the duty, and, unlike the husband, also have no financial obligation to support the handicapped child. No matter what a grandparent may want to do with the information a doctor may impart concerning a potential birth defect, the grandparent is powerless to act upon it. Only the daughter or daughter-in-law, as the case may be, has the constitutional right to terminate the pregnancy or bring it to term. For that reason, the creation of a tort duty to grandparents will not promote the policy of conforming conduct to acceptable standards of care.
[Ibid.]
Attempts to extend wrongful birth claims beyond those brought by parents of the disabled child overlook the basic principle that undergirds the cause of action. As the Court in Hummel, supra, pointed out, "the significance of the wrongful-life and -birth case is that the defendant's breach of duty deprived the mother of the choice to terminate her pregnancy," and that duty sprang from the United States Supreme Court's decision in Roe v. Wade.[3] 129 N.J. at 127, 608 A.2d 1341. Stated simply, the duty is owed to the parents and the birth disabled child within the limitations defined by case law, and to no others.[4]

IV.
We now turn to the dismissal of the legal malpractice claim against Gelzer and his firm. Plaintiffs' claim is brought on two independent theories. The first theory is that if the 1984 settlement served to preclude John Jr.'s claim, Gelzer breached a duty owed to John Jr. by failing to consider his interests separate and apart from his parents' interests. We accept for the purpose of this decision that Gelzer owed a duty to John Jr. without further analysis. Assuming that such a duty existed, there was no breach by Gelzer since we have held that John Jr.'s cause of action has not been precluded by the 1984 settlement. Nor has it been diminished *884 by the settlement. John Jr. will be permitted to prove the total value of his claim, offset only by that amount of the 1984 settlement attributable to his extraordinary medical costs already expended or set aside for that purpose. Accordingly, Gelzer and his firm were entitled to dismissal of that claim.
The second theory of plaintiffs' legal malpractice claim is Lucy's contention that Gelzer breached a duty owed to her by inducing her to settle for what she has termed "a woefully inadequate amount." We have no hesitancy in concluding that the Law Division judge's reason for dismissing her claim is unsupported by the record. There was no analysis of the liability claim against defendants, nor was there an analysis of the extraordinary medical costs that were predicted as of the 1984 settlement. The Law Division judge's reasons for dismissing the claim were based on his gut feeling and no more. He may be correct in his surmise, but there is simply no way for us to review his conclusion.
We note in passing, that the Gelzer defendants have raised the statute of limitations as a defense to Lucy's claim. On remand, that issue should be explored in detail before the merits of the malpractice claim are pursued further. Summarizing as to this point, we affirm that part of the summary judgment in favor of the Gelzer defendants that dismissed claims brought on behalf of John Jr. We reverse and remand for further proceedings as to the claim brought by Lucy in her individual capacity.
In conclusion, the judgment under review is affirmed in part, reversed in part, and remanded for further proceedings in accord with this opinion.
NOTES
[1] The motion judge did not specifically address Lucy's individual claim, which, on its face, appeared to seek additional emotional distress damages. However, at oral argument before us, plaintiffs agreed that any such claim was resolved by the 1984 settlement, and that Lucy's current individual claim is only for the alleged malpractice of Gelzer and his firm.
[2] Berman v. Allan, 80 N.J. 421, 404 A.2d 8 (1979)(recognizing the parents' right to recover for emotional distress damages for the wrongful birth of a child born with birth defects); Schroeder v. Perkel, 87 N.J. 53, 432 A.2d 834 (1981)(recognizing the right of parents to recover the extraordinary expenses of raising a child born with birth defects); Procanik, supra, 97 N.J. at 348, 478 A.2d 755.
[3] Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
[4] Our research reveals that only two other states have had the opportunity to address the identical issue of a sibling's right to bring a wrongful birth claim where wrongful birth claims have otherwise been recognized. In each case, the claim was rejected. See Miller v. Duhart, 637 S.W.2d 183, 184 (Mo.Ct.App.1982); Sala v. Tomlinson, 73 A.D.2d 724, 725, 422 N.Y.S.2d 506 (.1979). Cf. Basten v. United States, 848 F.Supp. 962, 964 (M.D.Ala. 1994) (where the court permitted a sibling to recover wrongful birth damages "reluctantly," and only because the parties stipulated that she could recover damages for the loss of parental services.)