814 A.2d 1130

MANUEL CALALPA AND AUGUSTINA CALALPA, PLAINTIFFS–APPELLANTS, v. DAE RYUNG CO., INC., AND C & K MOULDING CO., INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 15, 2003—Decided January 31, 2003.

Before Judges CONLEY, CARCHMAN and PARRILLO.

*Brian E. Mahoney* argued the cause for appellants (*Ginarte, O'Dwyer, Winograd & Laracuente,* attorneys; *Mr. Mahoney,* of counsel and on the brief).

Respondent *Dae Ryung Co., Inc.,* has not file a brief.[1]

*Patricia L. Dee* argued the cause for respondent *C & K Moulding Co., Inc. (Capehart & Scatchard,* attorneys; *Mr. Dee,* of counsel and on the brief).

The opinion of the court was delivered by

---

[1] On appellants' reply brief is the following "note":

The sole respondent on appeal will be C & K Moulding Co., Inc. whose interests on the motion which produced the order under review were advanced by the workers' compensation carrier, State Claims Adjusters, Inc.

CONLEY, P.J.A.D.

This appeal arises in the context of a workers' compensation benefitted employee's settled intentional wrong tort litigation against defendants, one of whom is unquestionably his employer and the other an apparent, but not dispositively determined, joint employer.[2] The workers' compensation carrier successfully obtained an order from the trial judge according it the benefit of the workers' compensation lien pursuant to *N.J.S.A.* 34:15–40 and, thus, directing that "plaintiff shall reimburse [the workers' compensation carrier] its compensation lien out of the settlement proceeds in the amount of $39,020.00." Plaintiff appeals, arguing that the $200,000 settlement proceeds for his injury, three amputated fingers, hardly reflects his full damages, that he has not received a prohibited "double recovery" and, further, that the intentional wrong tort litigation settlement proceeds are not a "third person" recovery triggering the statutory lien.

In *Millison v. E.I. du Pont de Nemours,* 101 *N.J.* 161, 501 *A.*2d 505 (1985), the Supreme Court had this to say about the subject:

> If, however, a plaintiff should prevail in his suit based on intentional wrong, he would not be entitled to keep the entire amount of his compensation award as well as his civil suit remedy. That double recovery is to be avoided is evident from so much of the Compensation Act as demands that compensation claimants who have recovered from third parties be required to reimburse their employer or its insurance carrier for compensation payments already made. *N.J.S.A.* 34:15–40. Thus *if the trier-of-fact determines that [the employer or co-employees] have been*

---

[2] The workers' compensation benefits paid to plaintiff Manuel Calalpa (hereinafter plaintiff) were paid by defendant C & K Moulding Co., Inc.'s workers' compensation insurance carrier. The tort litigation settlement monies were paid by defendant Dae Ryung Co., Inc.'s liability insurance carrier. But, although separate corporate entities, the record fairly well establishes a close interrelationship—both operate out of the same premises, both engage in the same work, both have the same corporate agent who also is their landlord, both filed joint tax returns, both, in this litigation, filed a joint answer (although Dae Ryung later filed a separate answer), and, finally, deposition testimony of their employees and representatives can fairly be read to describe them as indistinguishable. Indeed, when both defendants initially, albeit unsuccessfully, moved for summary judgment relying upon the workers' compensation bar, they asserted they were plaintiff's joint employers.

*guilty of an intentional wrong ... [the employer] or its insurance carrier will be able to offset compensation benefits previously paid to the extent that the civil damage award would serve as a double recovery.*

[*Id.* at 187, 501 *A*.2d 505 (emphasis added).]

*See also Kristiansen v. Morgan,* 153 *N.J.* 298, 312, 708 *A*.2d 1173 (1998), *opinion modified on other grounds,* 158 *N.J.* 681, 730 *A*.2d 1289 (1999).

Thus, the motion judge here found:

that *Millison v. E.I. du Pont,* 101 *N.J.* 161, 501 *A*.2d 505 (1985), is dispositive of this motion. Therein, the Supreme Court acknowledged an employee's right to maintain a separate [intentional wrong] tort action against his employer where the employer [committed an intentional wrong].

At the same time, the Court upheld the reimbursement to the comp carrier for amounts paid in workers['] compensation. The plaintiff is not entitled to keep the entire amount of the comp award as well as his civil suit remedy because as I find the Millison Court held, this would amount to a double recovery.

*The Supreme Court in several opinions has held that the Legislature's reference to a third person in title 34:15–40 is not to be confined to just third party tortfeasors, but also applies to recoveries that are the "functional equivalent of a recovery from a third party," such as here.*

In that regard, the Court reviewed the Supreme Court cases in *Frazier v. New Jersey Manufacturers,* 142 *N.J.* 590, 667 *A*.2d 670 (1995), and *Utica Mut. Ins. v. Maran & Maran,* 142 *N.J.* 609, 667 *A*.2d 680 (1995).

Further, in the Appellate Division decision in *Montedoro v. City of Asbury Park,* 174 *N.J.Super.* 305, 416 *A*.2d 433 (App.Div.1980), the Appellate Division came to a similar conclusion. *These cases recognize that the legislative intent [of N.J.S.A. 34:15–40] to integrate the sources of recovery and prevent a double recovery is paramount regardless of whether the cumulative awards are sufficient to compensate the plaintiff fully for his injuries.*

Under the circumstances, I can appreciate the plaintiff's desire to keep both awards but I do not find this to be legally permissible and as a result, the plaintiff's motion is denied.

[Emphasis added.]

In its main appellate brief, plaintiff disagrees, contending:

THE WORKERS' COMPENSATION CARRIER IS NOT ENTITLED TO ANY REIMBURSEMENT OF ITS LIEN OUT OF THE RECOVERY IN THIS ACTION BECAUSE THE GOVERNING STATUTE, *N.J.S.* 34:15–40, APPLIES ONLY TO THIRD PARTY ACTIONS AND, BY ANY SENSIBLE ANALYSIS, THIS ACTION IS IN THE NATURE OF A FIRST PARTY ACTION.

The argument is that defendants are not "third person" tortfeasors within the scope of *N.J.S.A.* 34:15 40. The reply brief takes a somewhat different tack, contending:

POINT I: AS HAPPENED IN THE MOTION COURT, DEFENSE COUNSEL PERSISTS WITH AN ARGUMENT THAT EQUATES AN OFF–SETTING ANTI–DUPLICATION CREDIT WITH A WORKERS' COMPENSATION LIEN.

    A. THERE IS A DISTINCTION BETWEEN A WORKERS' COMPENSATION LIEN AND AN OFF–SETTING ANTI–DUPLICATION CREDIT.

    B. THE OFF–SETTING ANTI–DUPLICATION CREDIT WORKS DIFFERENTLY THAN A WORKERS' COMPENSATION LIEN.

    C. THE MOTION COURT'S APPLICATION OF *N.J.S.* 34:15–40 WAS ILLOGICAL AND UNFAIR.

The reply brief recognizes that the statutory workers' compensation lien accords the employer's compensation carrier a dollar for dollar off-set and, thus, "does not require examination of whether an injured claimant has been made whole." *See Utica Mut. Ins. v. Maran & Maran,* 142 *N.J.* 609, 613, 667 *A.*2d 680 (1995); *Frazier v. New Jersey Mfrs. Ins.,* 142 *N.J.* 590, 602, 667 *A.*2d 670 (1995). Indeed, the lien attaches to the entire amount of third party proceeds and not just those monies which match the compensation benefits. *DeLane ex rel. DeLane v. City of Newark,* 343 *N.J.Super.* 225, 233–35, 778 *A.*2d 511 (App.Div.2001). But plaintiff distinguishes this statutory lien from an "off-setting anti-duplication credit" which, he claims, is "an entirely different kettle of fish," appearing, as a creation of decisional law, in "at least four different scenarios." In this respect, the reply brief asserts:

First, an off-setting anti-duplication credit may appear in the familiar context of successive torts:

Prior to the adoption of the Comparative Negligence Act, the courts in New Jersey formulated a separate "credit" concept designed to avoid duplicating compensation in cases in which the injured party settled with one tortfeasor and then instituted separate litigation against a person whose subsequent negligence aggravated the initial tort. The subsequent aggravation in those cases typically occurred as a result of medical malpractice. The courts reasoned that the torts in those cases were "successive" rather than "joint," thus precluding a contribution credit under the Joint Tortfeasors Contribution Law. Nevertheless, the courts acknowledged the possibility that the plaintiff may have received partial or total compensation for the subsequent tort as a result of the settlement with the initial tortfeasor. *Consequently, the courts ultimately required that the*

second tortfeasor receive what was in effect a pro tanto credit in the amount by which the first settlement exceeded the damages attributable to the settling party's tort.

[Brian E. Mahoney, *New Jersey Comparative Fault and Liability Apportionment Law* (Gann 2002), sec. 14:8, pp. 344–345 (emphasis added, citations omitted).]

Second, an off-setting anti-duplication credit may appear in the context of "second-collision" (or "crashworthiness") cases which, in the appropriate circumstances, may warrant a "credit" to the defendant vehicle manufacturer to subtract duplicative damages recovered by a plaintiff from the negligen[t] defendants in an earlier action. *Id.* at 15:6–6, p. 437 and at 14:8, p. 348, discussing *Crispin v. Volkswagenwerk, A.G.,* 96 *N.J.* 336, 346, 476 *A.*2d 250 (1984).

Third, an off-setting anti-duplication credit may be warranted in the unusual context of a wrongful life suit which was preceded by a wrongful birth suit. *Moscatello v. UMDNJ,* 342 *N.J.Super.* 351, 361–362, 776 *A.*2d 874 (App.Div.) [, *certif. denied,* 170 *N.J.* 207, 785 *A.*2d 435 (2001)] (contemplating a credit in a disabled child's wrongful life suit for amounts received by his parents in a settlement of earlier litigation based on a wrongful birth theory).

Fourth and finally, an off-setting anti-duplication credit is plainly what the New Jersey Supreme Court [in *Millison*] had in mind for an "intentional wrong" suit against an employer who had earlier paid workers' compensation.

These instances of "off-setting anti-duplication credit," plaintiff argues, "work different than a workers' compensation lien." The argument is that:

enforcement of a workers' compensation lien does not require examination of whether an injured claimant has been made whole. In contrast, however, by its nature, an off-setting anti-duplication credit analysis *may require* an examination of whether an injured claimant has been made whole. On the one hand, if the injured claimant has proceeded to verdict before a fact-finder and prevailed (and all the recoverable New Jersey damages components have been fully aired before the fact-finder), it stands to reason that the fact-finder's determination establishes the full measure of plaintiff's damages in the eyes of the law, and the defendant/judgment-debtor is entitled to a *pro tanto* (or dollar-for-dollar) reduction in liability in an amount equivalent to the workers' compensation benefits previously paid. The Court in *Millison* evidently contemplated that the off-setting credit would be subtracted from the ultimate findings of the "trier of fact" where plaintiff has "prevailed" and a "civil damage award" has been made.

On the other hand, if plaintiff has settled his Superior Court action, there is no assurance that plaintiff has been made whole and the direct subtraction of off-setting credits hardly serves to prevent a "double recovery"—it may well unjustly exacerbate what is already an "under recovery." A settlement usually represents a compromise on both sides, with many variables, and does not necessarily "make whole" the injured claimant. *Werner v. Latham,* 332 *N.J.Super.* 76, 79, 84–85, 752 *A.*2d 832 (App.Div.2000); *O'Brien v. Two West Hanover Co.,* 350 *N.J.Super.* 441, 795 *A.*2d 907 (App.Div.2002).

> Thus, where there has been a *settlement* of an "intentional wrong" case against an employer, plaintiff's counsel is entitled to ask the motion court to determine that the settlement represents a substantial compromise, that there has *not* been a double recovery, and that *NO* off-setting anti-duplication credit is appropriate. . . .

In essence, where there is an employer intentional wrong tort litigation settlement, plaintiff asks us to treat the workers' compensation carrier's lien as an equitable lien, subject to such equitable considerations as whether plaintiff has yet been fully recompensed for his injuries and to credit the carrier with only so much of the tort settlement as reflects an excess. The result here would be that the carrier would have no lien against the tort settlement proceeds as plaintiff contends those proceeds, even when combined with his workers' compensation benefits, do not fully compensate him for his injuries. And, to be sure, we have in other contexts imposed similar equitable lien concepts. *See Werner v. Latham,* 332 *N.J.Super.* 76, 752 *A.*2d 832 (App.Div.2000) (health benefits insurer's contractual lien upon tort settlement proceeds requires equitable considerations and matter was remanded for a hearing to determine whether plaintiff had been fully compensated for his damages before lien could attach); *Charnecky v. American Reliance Ins. Co.,* 249 *N.J.Super.* 91, 592 *A.*2d 17 (App.Div.1991), *aff'd o.b.,* 127 *N.J.* 188, 603 *A.*2d 512 (1992) (where uninsured motorist settlement and workers' compensation benefits, combined, may not fully compensate injured employee, *N.J.S.A.* 34:15–40 does not apply, rather, equitable considerations required a determination of whether employee was made whole and lien could attach only to excess), *overruled, Frazier v. New Jersey Mfrs. Ins., supra,* 142 *N.J.* at 605, 667 *A.*2d 670.

Plaintiff's arguments are not entirely without merit. Defendants are plaintiff's employers. They are not "third person" entities, so to speak. The statutory lien, then, could reasonably be said not to apply to a recovery from them in the intentional tort litigation. And, while *Millison* did recognize that credit for the workers' compensation benefits would be appropriate, the credit the court envisioned was to be accorded *"to the extent* that the civil damages award [or monies received by plaintiff employee in

settlement [3]] *would serve as a* double recovery." *Millison v. E.I. du Pont de Nemours, supra,* 101 *N.J.* at 187, 501 *A.2d* 505 (emphasis added). The use of the phrases "to the extent" and "would serve as a double recovery" could be construed as calling for an equitable lien because, if the monies received in the tort litigation and the workers' compensation benefits do not fully compensate plaintiff, as is contended here, how can there be a double recovery?

Moreover, the "double recovery" that a workers' compensation lien is intended to prevent does not neatly fit the circumstances here. As explained in 6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law,* § 110.02 at 110–3 to –4 (2002):

> It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess. *This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he or she would ordinarily pay,* which is correct since to reduce the third party's burden because of the relation between the employer and the employee would be a windfall that the third party has done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.

> [Emphasis added.]

Where, however the tortfeasor is the employer, the employer is not "neutral" and, if entitled to a lien, would not in the tort litigation "pay[s] exactly the damages he or she ordinarily pay . . .," or "come out even." This is so because, facially, the

---

[3] We recognize that *Millison* refers to a "trier-of-fact" adjudication. *Millison v. E.I. du Pont de Nemours, supra,* 101 *N.J.* at 187, 501 *A.2d* 505. But we find it hard to ascribe to our Supreme Court a lack of understanding that many of these cases are settled. We are sure the offsetting credit was thought to encompass all monies a plaintiff might obtain from an intentional wrong tort employer, whether by verdict or by settlement, just as would occur in what might be considered the typical third person tort litigation.

employer has paid damages from its tort pocket, but took some of that payment back from its workers' compensation pocket.[4]

Nonetheless, we think the workers' compensation carrier was properly accorded a dollar for dollar lien here for two reasons. First, the "double recovery" referred to by the *Millison* Court within the context of an injured employee's receipt of both workers' compensation benefits and civil damages for the same injuries focuses upon the notion that an employee cannot have both. As the Court observed in *Frazier v. New Jersey Mfrs. Ins., supra,* 142 *N.J.* at 596–98, 667 *A.*2d 670:

> "The Workmen's Compensation Act, as enacted in 1911 [*L.* 1911, *c.* 95], did not provide for the employer's recovery from the third person alleged to be responsible for the injuries sustained." *Johns–Manville Prods. Corp. v. Dronebarger,* 211 *N.J.Super.* 520, 524, 511 *A.*2d 1304 (Law Div.1986). Hence, an employee who recovered against a liable third party was entitled to keep 100% of the workers' compensation benefits, as well as 100% of any third-party recovery. "Thus, an injured employee was in some instances permitted a double recovery." *Ibid.*
>
> To overcome the inequity of double recovery, the Legislature amended the Workers' Compensation Act in 1913 by adding *N.J.S.A.* 34:15–40 (section 40), (*L.* 1913, *c.* 174, § 8). *Newark Paving Co. v. Klotz,* 85 *N.J.L.* 432, 91 *A.* 91 (Sup.Ct.), *aff'd,* 86 *N.J.L.* 690, 92 *A.* 1086 (E. & A.1914). With minor changes in 1931 (*L.* 1931, *c.* 279, § 3), 1936 (*L.* 1936, *c.* 162, § 1), 1951 (*L.* 1951, *c.* 169, § 1), and 1956 (*L.* 1956, *c.* 141, § 6), the 1913 amendment became codified in *N.J.S.A.* 34:15–40....
>
> . . . .
>
> [*s*]*ection 40 provides that an employee will be "guaranteed recovery for his common-law damages against contributing third-party tortfeasors or for his [workers'] compensation award, whichever is greater, but he may not duplicate these recoveries."*

> [Emphasis added.]

That is to say, while an employee may pursue both compensation benefits and common-law tort damages, he may not keep both. Allowing equitable considerations to permit an employee to retain

---

[4] Under the particular facts here, the appearance of the employer giving from one pocket and taking back from the other is not entirely accurate. As we have previously said, the workers' compensation benefits were paid by C & K Moulding's insurance carrier whereas the tort settlement was paid by Dae Ryung Co.'s liability carrier. We suppose in most instances of employer intentional wrong tort actions there will be two different pockets—the workers' compensation insurance carrier and the liability insurance carrier.

all or a part of both his or her compensation benefits and tort proceeds would allow recovery of both. Further, the "to the extent" language in *Millison* probably reflects the Court's recognition that employer intentional wrong is difficult to prove and a plaintiff, therefore, may well not obtain any monies at all in the tort litigation.

Second, we agree with the motion judge's characterization of the tort litigation as the equivalent of a "third person" action. In this respect, the "third person" concept in *N.J.S.A.* 34:15–40 has been broadly applied to both true third person tortfeasors and tortfeasors who are the "functional equivalent." *Frazier v. New Jersey Mfrs. Ins., supra,* 142 at 598, 667 A.2d 670 (statutory lien applied to attorney malpractice damages); *Midland Ins. Co. v. Colatrella,* 102 *N.J.* 612, 618, 510 *A.*2d 30 (1986) (statutory lien applied to uninsured motorist insurance recovery). We are convinced the intentional wrong civil tort litigation against defendants is the functional equivalent of a "third person" tortfeasor suit. Where an employee has pierced the threshold of the compensation bar, he or she has established that the employer's conduct is beyond the "natural risk[s] of" employment and does not "arise[ ] out of" the employment relationship. *Laidlow v. Hariton Machinery Co., Inc.* 170 *N.J.* 602, 606, 790 *A.*2d 884 (2002). In effect, the employer has stepped out of its employer shoes into those of an actionable tortfeasor. *See N.J. Practice Series,* Workers' Compensation Law, § 17.13 "Third–Party Liens" ("The lien of the employer may be asserted upon any third party including those that involve intentional wrong" (*citing Millison v. E.I. du Pont de Nemours, supra,* 101 *N.J.* 161, 501 *A.*2d 505)); 6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law, supra,* § 103.02 at 103–07.

Other states that have considered the issue, usually in the context of whether the employee must elect one or the other remedy, have required an offset or lien. For instance, the Supreme Court of Connecticut, in holding that an employee may seek both workers' compensation benefits and civil tort damages

where the employer commits an intentional tort, also held that the employer must be entitled to an offset for the compensation benefits paid to avoid double recovery, observing:

> This approach is not without precedent. *See, e.g., Whitney–Fidalgo Seafoods, Inc. v. Beukers,* 554 P.2d 250, 254 (Alaska 1976) (court held that mere acceptance of workers' compensation benefits by the employee did not constitute an election and therefore the employee could bring his common law suit, but payments made would be applied against any damage judgment he obtained); and *Worthington v. Industrial Commission of Arizona,* 85 *Ariz.* 310, 316, 338 *P.2d* 363 (1959) (court held that receipt of workers' compensation benefits did not cause a widow to lose her rights to bring a wrongful death action although the sum received in the tort settlement could be offset against the amount of any compensation recovery); *Mike v. Aliquippa,* 279 *Pa.Super.* 382, 393, 421 *A.2d* 251 (1980) (court held that any compensation benefits that had been accepted would be duly credited against any recovery from the tort action to prevent any possibility of double recovery).

[*Suarez v. Dickmont Plastics Corp.,* 229 *Conn.* 99, 639 *A.2d* 507, 515–16 (1994).]

*See also Gagnard v. Baldridge,* 612 *So.*2d 732, 736 (La.1993) (employer entitled to offset in intentional wrong suit, but only for monies received for past and future wages and medical expenses.). On the other hand, a few states have strictly required an election, thus obviating the necessity for a lien or offset. *See* 6 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation,* § 115.02 at 115–2. Only Ohio has allowed an employee to seek both types of remedies and keep both the compensation and tort damages award. *Jones v. VIP Dev. Co.,* 15 *Ohio St.*3d 90, 472 *N.E.*2d 1046 (1984).[5]

Irrespective of foreign jurisdiction law on the issue, *Millison* has clearly permitted an employee to pursue both remedies, but recognized that the employer retains the right to a lien or offset

---

[5] *Jones* was superceded by the Ohio Tort Reform Act, *Ohio Rev.Code Ann.* § 2317.45, that required collateral benefits received by a party to be deducted from a jury verdict. *Felden v. Ashland Chem. Co., Inc.,* 91 *Ohio App.*3d 48, 631 *N.E.*2d 689, 702–03 (1993). *Jones,* has however, apparently been resurrected by a declaration of the act's unconstitutionality. *Johnson v. BP Chemicals, Inc.,* 85 *Ohio St.*3d 298, 707 *N.E.*2d 1107 (1999). The act, moreover, was repealed in 2001.

for compensation benefits against monies obtained in the tort litigation. We are convinced this is a section 40 lien.

Affirmed.