**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2214-15T1

ADAM MOGUL,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued February 14, 2017 — Decided August 18, 2017

Before Judges Ostrer and Leone (Judge Ostrer concurring).

On appeal from the Board of Trustees, Police and Firemen's Retirement System, PFRS No. 3-10-048888.

M. Scott Tashjy argued the cause for appellant (The Tashjy Law Firm, LLC, attorneys; Mr. Tashjy, of counsel and on the briefs).

Jeff S. Ignatowitz, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mr. Ignatowitz, on the brief).

PER CURIAM

Petitioner Adam Mogul appeals the January 11, 2016 decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS). The Board found Mogul ineligible for accidental disability retirement benefits under N.J.S.A. 43:16A-7(1). We affirm.

I.

Except as noted, the following facts were found by the Administrative Law Judge (ALJ) in his October 29, 2015 decision and adopted by the Board. Mogul enrolled in the PFRS when he began his career as a police officer for the Township of Ocean in 1994. By 2011, Mogul reached the rank of corporal.

On March 3, 2011, Mogul and officers Matthew Quinn and Jeremy Samuel responded to a "well being" check of an allegedly intoxicated and suicidal civilian. Through a window of the residence, Mogul observed the civilian sleeping on the couch. Mogul knocked on the door of the residence and identified himself as a police officer. The civilian ignored Mogul's request to come to the front door. Mogul observed as the civilian walked toward a table, obtained a black handgun, and "racked the slide" as if to chamber a round.

Mogul drew his firearm, advised the other officers the civilian had a gun, and moved away from the door toward the

street. The civilian opened the door and displayed the gun. When Mogul directed the civilian to drop the gun, the civilian aimed the gun at Mogul. Mogul turned to obtain cover but struck a tree, causing him to fall to one knee.

With his back to the civilian, Mogul heard a noise he equated with a "dry firing." Mogul explained that he heard a "click" that he knew was "a gun either being misfired or a gun [being triggered] not having a round in it." Nonetheless, Mogul wondered whether he had been shot. Mogul turned toward the civilian. Mogul testified that he again told the civilian to drop the gun and that he was just about to shoot the civilian when he saw a projectile hitting the civilian.

Officer Quinn observed the civilian point the weapon toward Mogul and saw Mogul dive for cover. Quinn heard a click which he equated with the civilian disengaging the safety. Quinn fired one shot, and the civilian fell face first to the ground. Quinn removed the firearm from the civilian's hand and saw it contained no magazine.

Mogul testified he ran over to the civilian and determined Officer Quinn shot him. Mogul knew he needed to call for assistance. The officers started first aid, but Mogul knew the civilian was already dead. Mogul instructed the other officers not to touch the civilian's weapon. Mogul testified he knew

"through protocol" he needed to take Quinn's weapon, and he did. Mogul testified that after a detective arrived and took Quinn away, he "became jelly," "was walking around in circles," and "didn't know what to do."

Following the incident, Mogul took two to three weeks off from work. He returned to work for an additional two years and was promoted to Sergeant, but had difficulty with the work. On November 27, 2013, Mogul filed an application for accidental disability retirement benefits based on the March 3, 2011 incident.

On July 15, 2014, the Board denied Mogul's application for accidental disability retirement benefits, instead awarding him ordinary disability retirement benefits. Mogul appealed, and the Board assigned the matter as a contested case to the Office of Administrative Law. The ALJ affirmed the denial on October 29, 2015, finding the incident was not undesigned and unexpected. On January 11, 2016, the Board affirmed the ALJ's decision.

## II.

We must hew to our standard of review. Judicial "review of administrative agency action is limited. 'An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or

unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citation omitted). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (citation omitted).

"Generally, courts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). "Such deference has been specifically extended to state agencies that administer pension statutes," because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (citation omitted). "An appellate court, however, is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Richardson, supra, 192 N.J. at 196 (citation omitted). Courts "apply de novo review to an agency's interpretation of a statute or case law." Russo, supra, 206 N.J. at 27.

III.

"[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008). A PFRS member is eligible to "be retired on an accidental disability retirement allowance" if "the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:16A-7(1).

"'[T]he question of what constitutes a "traumatic event" . . . has dogged courts for generations.'" Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 484 (App. Div. 2017) (quoting Russo, supra, 206 N.J. at 28). "[O]ur Supreme Court has redefined and applied that phrase in three cases: Richardson, Patterson, and Russo." Ibid.

This is a "so-called mental-mental" case, "in which a purely mental stimulus results in emotional or nervous injury." Brunell v. Wildwood Crest Police Dep't, 176 N.J. 225, 243 (2003). "In a mental-mental case, Patterson is the threshold that must be met for further inquiry to be warranted." Russo, supra, 206 N.J. at 32.

Under Patterson, supra, "the disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." 194 N.J. at 50.[1] This "assure[s] that the traumatic event is objectively capable of causing a permanent, disabling mental injury to a reasonable person under similar circumstances." Ibid.

Here, the Board initially found, and the ALJ agreed, that the Patterson threshold was not met. However, the Board ultimately found the Patterson threshold was met. That conclusion is unchallenged on appeal.

Once the Patterson threshold is met, "to obtain accidental disability benefits for a mental injury precipitated by an exclusively mental stressor, a member must satisfy the standards in Richardson." Ibid. Under Richardson, supra, "to obtain accidental disability benefits, a member must prove . . . that he is permanently and totally disabled . . . as a direct result of a traumatic event," "that the traumatic event occurred during and as a result of the member's regular or assigned duties,"

---

[1] The Court commented that "[u]nder that [Patterson] standard a permanently mentally disabled policeman who sees his partner shot . . . could vault the traumatic event threshold." Patterson, supra, 194 N.J. at 50.

"that the disability was not the result of the member's willful negligence," and "that the member is mentally or physically incapacitated from performing his usual or any other duty." 192 N.J. at 212-13.

For a traumatic event to qualify, it must be "identifiable as to time and place," "undesigned and unexpected," and "caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work)." Ibid. (emphasis added). Essentially, the traumatic event must have been "an unexpected happening." Id. at 214. The ALJ and the Board found Mogul failed to establish that the event was "undesigned and unexpected." Ibid.

In Russo, our Supreme Court applied the Richardson framework in the context of a Patterson mental-mental case. In particular, the Court explained that "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test." Russo, supra, 206 N.J. at 33. For instance, "an emergency medical technician [(EMT)] who comes upon a terrible accident involving life-threatening injuries or death, will have experienced a Patterson-type horrific event, but will not satisfy Richardson's

'undesigned and unexpected' standard because that is exactly what his training has prepared him for." Ibid.

Like the EMT encountering a terrible fatal accident, Mogul "experience[d] a horrific event which falls within his job description and for which he ha[d] been trained." Ibid. Mogul had a civilian point a gun at him, momentarily thought he had been shot, and witnessed another officer shoot the civilian.

Mogul was trained to handle such incidents. Mogul underwent training at the police academy, received continuing training and semi-annual firearm training thereafter, served as a police officer for seventeen years, and was promoted in rank. Mogul admittedly received extensive and frequent training in the use of firearms and deadly force. The Board found that after the civilian picked up the gun, Mogul drew his own firearm and took cover as he was trained to do. The Board agreed with the ALJ that "a police officer's training in the use of force and how to take cover is a basic tool set of a police officer." Contrary to Mogul's argument, under Russo "a member's training must be considered." Thompson, supra, 449 N.J. Super. at 504.

Moreover, this was "a situation in which [Mogul] should have expected to find himself" in his duties as a police officer. Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346, 355 (App. Div. 2014). The Board agreed

with the ALJ that "a police officer using deadly force, or being present while a colleague uses deadly force, is not undesigned or unexpected." The Board found "having to disarm or shoot an armed subject, while certainly stressful, is a situation police officers are trained for and are expected to confront." Confrontations with armed civilians are an inherent part of a police officer's work, not "an unexpected happening." See Richardson, supra, 192 N.J. at 214. Thus, these actions are not undesigned and unexpected in a police officer's line of work.

Thus, Mogul's situation was analogous to the EMT "who comes upon a terrible accident involving life-threatening injuries or death." Russo, supra, 206 N.J. at 33. Because the confrontation was "a horrific event which falls within [Mogul's] job description and for which he has been trained," under the Supreme Court's analysis in Russo he was "unlikely to pass the 'undesigned and unexpected' test." Ibid. Given Russo, we cannot say it was arbitrary, capricious, or unreasonable for the Board to conclude Mogul did "not satisfy Richardson's 'undesigned and unexpected' standard because that is exactly what his training has prepared him for." Ibid.[2]

---

[2] Cf. Russo, supra, 206 N.J. at 34-35 (ruling it was unexpected for "a newly-minted police officer" who was "completely untrained and unequipped for firefighting" to be "ordered into a burning building" to rescue the occupants); Thompson, supra, 449

Mogul argues the incident was undesigned and unexpected because he was on a routine "well being" check, and he had never been threatened with a weapon or had to shoot anyone on a "well being" check. However, Mogul went on the check prepared for such eventualities: Mogul was armed and wearing a bullet-proof vest. Moreover, Mogul was aware the civilian was reportedly intoxicated and suicidal. In any event, Mogul's argument is too narrow in focus. Regardless of what particular event they are responding to, police officers are expected to be prepared to encounter armed civilians and dangerous situations.

Mogul cites Richardson, supra, where, "[w]hile performing the regular tasks of his job as a corrections officer, subduing an inmate, Richardson was thrown to the floor and hyperextended his wrist." 192 N.J. at 214. Our Supreme Court held "[t]he occurrence was . . . unexpected and undesigned" and "a traumatic event." Id. at 214-15. The Court noted a police officer who becomes "permanently and totally disabled during the chase [of a suspect] because of a fall, has suffered a traumatic event."

N.J. Super. at 504 (ruling physical assaults on a teacher were undesigned and unexpected where she had not "received training about handling violence from special needs students"); Moran, supra, 438 N.J. Super. at 355 (ruling that, because an engine company firefighter's "training had not prepared him to break into burning buildings without the battering rams and other specialized equipment used by the truck company," it was undesigned and unexpected that he would have to kick in a door to rescue victims trapped inside a burning building).

Id. at 213. The Court rejected the argument "that a traumatic event cannot occur *during* ordinary work effort. Indeed it can. A policeman can be shot while pursuing a suspect," which would be "undesigned and unexpected." Id. at 214.

Richardson's holding, and its examples, all involve permanently-disabling physical injury to the officer.[3] Richardson suggests it may be undesigned and unexpected for a police officer to be shot or to receive a permanently-disabling physical injury in pursuing and subduing a suspect. However, it is not undesigned and unexpected for an officer to confront an armed or dangerous suspect, or to use necessary force including deadly force against a suspect. Under the Supreme Court's analysis in Russo for mental-mental disabilities, Mogul's mental disability does not satisfy Richardson's "undesigned and unexpected" standard because such an event "falls within [a police officer's] job description and [is an event] for which he has been trained." Russo, supra, 206 N.J. at 33.

---

[3] The other examples in Richardson, supra, also involved physical injury that could be permanently disabling. 192 N.J. at 214 ("[A] librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court."). Similarly, the claimant suffered permanently-disabling physical injury in Moran and Brooks v. Bd. of Trs. Pub. Emps.' Ret. Sys., 425 N.J. Super. 277, 280 (App. Div. 2012), where a custodian carrying a 300-pound weight bench "heard his shoulder 'snap' as the bench fell to the floor, which resulted in a total and permanent disability."

Here, Mogul did not suffer a permanently-disabling physical injury. Instead, Mogul confronted an armed civilian, mistakenly believed the civilian shot him, and saw another officer use deadly force against the civilian.[4] We cannot say the Board was arbitrary, capricious, or unreasonable in finding such a confrontation, which resulted in no physical injury to Mogul, was not undesigned and unexpected.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Mogul was not actually shot at or wounded and did not himself kill the civilian. There was no "firing of [Mogul's] weapon or an exchange of gun fire" or "serious bodily injury" to Mogul or to "another law enforcement officer employed in the same agency." Patterson, supra, 194 N.J. at 49 (quoting N.J.S.A. 40A:14-196). Thus, we do not address such situations.

A-2214-15T1

OSTRER, J.A.D., concurring.

I concur with and join in the court's opinion.  Our Supreme Court has declared that "a traumatic event" under N.J.S.A. 43:16A-7(1) must be "undesigned and unexpected."  Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 192 (2007).  In a case involving a claim for mental health disability, the Court clarified that what qualifies as "undesigned and unexpected" depends on an employee's job duties and training: "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test."  Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 33 (2011).

That test constrains us to reach a harsh result in this case.  Had the civilian pointed and dry fired his gun not at Mogul, but at a third person, such as a visiting social worker covered by the Public Employees' Retirement System, see N.J.S.A. 43:15A-43 (authorizing accidental disability pension), and that worker subsequently suffered a mental disability, we might have reached a different result.  That is because the social worker's training and job description did not contemplate such a scenario.  Yet, those most likely to suffer post-traumatic

stress disorder are public employees like Mogul, who confront "terrifying or horror-inducing events," see Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 34 (2008), as a regular part of their jobs and become disabled despite all their training. See Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 508 n.3 (App. Div. 2017) (Ostrer, J., dissenting) ("Rates of PTSD are higher among veterans and others whose vocation increases the risk of traumatic exposure (e.g., police, firefighters, emergency medical personnel)" (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 276 (5th ed. 2013))). Needless to say, we are bound by the Court's precedent as we understand it. Moscatello ex rel. Moscatello v. Univ. of Med. and Dentistry of N.J., 342 N.J. Super. 351, 363-64 (App. Div.), certif. denied, 170 N.J. 207 (2001).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2214-15T1