**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0327-24

REGINA ROBINSON and
CHARLES HARRIS,

     Plaintiffs-Appellants,

v.

JERSEY CITY BOARD OF
EDUCATION, NORMA
FERNANDEZ, both individually and
as the Acting Superintendent of the
Jersey City School District, EDWIN
RIVERA, both individually and as the
Director of Human Resources of the
Jersey City School District, NATALIA
IOFFE, both individually and as a
member of the Jersey City Board of
Education, GINA VERDIBELLO,
both individually and as a member of
the Jersey City Board of Education,
ALEXANDER HAMILTON, both
individually and as a member of the
Jersey City Board of Education,
PAULA JONES-WATSON, both
individually and as a member of the
Jersey City Board of Education,
YOUNASS MOHAMED-BARKOUCH,
both individually and as a member of
the Jersey City Board of Education,

NOEMI VELAZQUEZ, both
individually and as a member of the
Jersey City Board of Education,
LORENZO RICHARDSON, both
individually and as a member of the
Jersey City Board of Education, and
LEKENDRICK SHAW, both
individually and as a member of the
Jersey City Board of Education,

     Defendants-Respondents.

_____

Argued September 29, 2025 – Decided October 31, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2155-22.

Desha Jackson argued the cause for appellants (Desha Jackson Law Group, LLC, attorney; Desha Jackson and Stephen J. Edelstein, on the briefs).

Cherie L. Adams argued the cause for respondents (Adams Lattiboudere Croot & Herman, LLC, attorneys; Cherie L. Adams, of counsel and on the brief).

PER CURIAM

Plaintiffs Regina Robinson and her spouse Charles Harris appeal from an August 5, 2024 order granting summary judgment in favor of defendants the Jersey City Board of Education ("JCBOE"); Norma Fernandez, its then-acting Superintendent; Edwin Rivera, Director of Human Resources; and various

2

elected members of the school board. Plaintiffs' complaint alleged race and gender-based discrimination, harassment, and retaliation in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50 and the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 - 14.[1] The court subsequently denied plaintiffs' motion for reconsideration. For the reasons that follow, we affirm both orders.

I.

Plaintiffs are husband and wife. On August 24, 2017, Franklin Walker, former superintendent of the JCBOE, hired Robinson, a Black female, to serve as a tenured School Business Administrator in the Jersey City Public Schools.[2] There is no dispute Robinson held the requisite certification to serve in this role consistent with applicable State Board regulations.

Robinson was hired pursuant to a contract with the district and served from 2017 until August 2022 when her contract was not renewed.[3] Robinson's contract provided for a salary of $176,868 per year, as reflected in the September

---

[1] Pursuant to an order entered on November 28, 2022, the court dismissed all allegations against individual defendants.

[2] The position of Business Administrator is statutorily mandated pursuant to N.J.S.A. 18A:17-14.1.

[3] Robinson's contract is not included in the record before us.

2017 Personnel Action Form recommending her appointment, following the retirement of her predecessor, Luiggi Campana. Pursuant to JCBOE Policy 1320, Robinson's responsibilities were to: supervise the management of the schools' financial affairs; develop a budget and financial plan; establish standardized accounting practices and supervise accounting; oversee payroll operations; safeguard all funds; manage the district's real estate holdings and insurance programs; attend and record the minutes of the board meetings, and supervise non-educational staff such as the district's food, property, purchasing, and transportation services. Robinson's tenure with the district began in the final year of the State takeover of the district and in 2018, the State returned control of the district to the JCBOE.

After working in the district for approximately four years, Robinson filed a series of internal human resources/affirmative action complaints and circulated memos to her supervisors and district personnel alleging discrimination as a result of inequitable pay based on her sex. The record shows that on June 10, 2021, Robinson wrote to both former superintendent Walker and Board President Mussab Ali, alleging discrimination in pay. Days later, Robinson wrote to Melissa Pearce, executive county superintendent, stating her salary of $176,868 was not fair or equitable when compared to the salary of business

A-0327-24

administrators in other school districts. Although she initially complained of the disparity in pay, her other complaints included an inability to hire the staff she needed to run the business office, defendants' failure to address her concerns over their hiring preferences, and that other employees were engaged in the "unlawful practice of selling sick days to non-retiring employees." According to Robinson when she complained to defendants, she was made to endure additional harassment and even the ensuing district investigation into her claims was "handled improperly without the required confidentiality."

On December 1, 2021, Robinson contacted Walker to advise that she was a victim of a hostile work environment due to racial animus. Two days later, Robinson contacted Superintendent Fernandez to express her opposition to the decision to pay additional money to a vendor, who she claimed had failed to perform work. Approximately ten days later, Robinson filed an affirmative action complaint, alleging harassment and a hostile workplace, she wrote:[4]

> I continue to be subjected to continuous mistreatment
> by Edwin Rivera and individuals of the HR
> Department. [Director of Human Resources] Mr.
> Rivera has openly "trashed" and slandered my name to
> employees her serve in the Union Leadership positions
> on or about December 6, 2021, that include members of
> the ESA, PPA collective bargaining units and the

---

[4] Robinson erroneously dated this complaint form as of October 5, 2021; a mistake that has been parroted by the parties throughout their briefing.

assistant director of HR. Ms. Harold who is aware of my AA complaint bare witness to the hostile conversation, triangulation and attempt by Mr. Rivera to sabotage my relationship and reputation with the District's Union Leadership. [sic]

Under the heading "[w]hat corrective action are you seeking?", Robinson stated:

> On Friday, December 10, 2021 Mr. Walker called a meeting with Edwin Rivera and myself to "move forward. I told Mr. Walker I'm beyond "frustrated", my blood pressure is up, and that the "black girl" can't get the positions posted. He wanted to know what we do to move forward, the HR department need to support me. I said some choice "F" bomb words and when Edwin Rivera wanted to speak I apologized to Mr. Walker and said I was not going to do this with Edwin.
>
> On Friday, December 10, 2021 I spoke with Sabrina Harold, AA Officer and explained to her what happened, and that I am clearly upset and that I was "leaving" the building. I told her I was "not quitting", but would not be returning to the building until that matter was resolved. I explained to Ms. Harold, that she is fully aware of the situation as the AA Officer needs to handle this matter. I explained to her two years ago I suffered a "heart attack" and I was not going to let this place make me sick, as I currently can get my blood pressure under control. She was going to speak with Mr. Walker. [sic]

On the same day, Robinson provided notice of injury to the district stating that she was suffering from work-related stress and elevated blood pressure. She

6

A-0327-24

did not return to work.[5]  In February 2022, Robinson filed an EEOC complaint, alleging a hostile work environment and discrimination, which was withdrawn.

On June 30, 2022, plaintiffs filed a six-count complaint against the JCBOE and district defendants, alleging hostile work environment, discrimination, harassment, unequal pay because of her race and gender, retaliation under CEPA, and loss of consortium.  As in prior internal memos and forms, Robinson alleged multiple instances where defendants prevented her from fulfilling her duties, prevented her from hiring staff and intentionally undermined her with the leadership.  She alleged that Rivera thwarted her efforts to hire staff because of his preference for Latino candidates and his "cronies."  Robinson further alleged she complained to the Board about its "sanctioned practice of selling sick days to non-retiring employees" and advised against Rivera and Fernandez's appointment of a Coordinator of Contractual Operations, actions that invited further hostility and retaliatory acts against her, which caused her significant stress.

---

[5]  On January 18, 2022, Robinson asserts that she provided a doctor's note as proof she was under a doctor's care, a claim, which is refuted by defendants.  No such record is contained in the record before us.

She eventually left the district on medical leave related to stress. In August of the same year, Robinson was placed on medical leave with full pay and benefits. This leave was subsequently extended through the end of Robinson's contract; she never returned to work. The JCBOE did not renew Robinson's employment contract. Robinson claims her leave and complaint formed the basis for additional retaliation by defendants, including their decision to file two sets of tenure charges against her.

After the filing of her complaint, a period of discovery ensued between the parties whereby only limited discovery was exchanged. Defendants moved for summary judgment following the expiration of the April 15, 2024 discovery end date and prior to the June 20, 2024 trial date. Plaintiffs filed no timely opposition to defendants' summary judgment motion but sought an adjournment, which the court granted. Plaintiffs eventually responded to the motion and emailed defendants a log of 1,200 documents, rather than annexing the actual documents in response to defendants' request for production.[6] Defendants moved to strike plaintiffs' late-served document production. And, plaintiffs

---

[6] Plaintiffs document production consisted of a computer-generated document log, listing files by name, document type, date, topic, and comments, categories and bate number.

cross-moved for leave to file an amended complaint and reopen discovery.[7]

On August 5, 2024, the court entered two orders: the first granted summary judgment in favor of defendants and the second denied plaintiffs' motion to amend the complaint and reopen discovery. The court issued separate written statements of reasons with each order.

In granting summary judgment, the court stated "there are no triable issues of material fact. . . . [p]laintiffs did not include any of their document production to the [c]ourt for review in their opposition to the motion and did not offer a sworn affidavit, or other competent evidence, to support their claims." The court declined to consider plaintiffs' "late-served document production." The court explained [p]laintiffs have not provided the specific documents that they utilize to support their opposition. Plaintiffs only mention their allegations in the [c]omplaint, an internal complaint submitted by [p]laintiff, an EEOC Inquiry Information Form, and an index of their document production. These documents are mere argument and speculation and do not constitute competent and persuasive evidence that support [p]laintiffs' claims. On the same day, the court

---

[7] On July 23, 2024, plaintiffs, via attorney certification, argued the documents defendants sought to strike were produced in June 2024 and are already in defendant's possession "since one or more of them were parties to the communications produced, or are policy or other similar documents created by JCBOE."

A-0327-24

found defendants' motion moot based on its grant of summary judgment and dismissal of plaintiff's complaint.[8]

Robinson moved for reconsideration and provided a certification and appendix with attachments, including a June 2021 memorandum seeking additional compensation, internal discrimination complaint forms, and various email communications between Robinson, HR Director Rivera, and Superintendent Fernandez, mostly expressing her need for additional staff and frustration over being excluded from personnel meetings and decisions. The court denied the motion in a brief statement included in the order.

The court explained it had previously granted summary judgment because plaintiffs failed to demonstrate a triable issue of material fact and had failed to include any documents, sworn affidavits or other competent evidence to support their claims. The court found that plaintiffs failed to provide evidence, including documents or Robinson's sworn statements, to support claims of lower compensation, repeated mistreatment and harassment by the JCBOE, understaffing, whistleblowing, or internal and external complaints. The court reiterated the underlying summary judgment motion was granted due to

---

[8] Robinson's tenure charges are neither before us nor included as an exhibit for this appeal.

plaintiffs' failures to both include documentation and competent evidence in support of their claims and present evidence to dispute defendants' statement of material facts with specific citations to the record pursuant to Rule 4:49-2(a) and (c). This appeal followed.

## II.

We review de novo the trial court's grant of summary judgment to defendants. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Townsend v. Pierre, 221 N.J. 36, 59 (2015)). Applying the same standard that governs the trial court's review, we determine whether "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a ECo. of Am., 142 N.J. 520, 540, (1995); R. 4:46-2(c). However, this court owes "no deference to the motion judge's conclusions on issues of law." Bove v. AkPharma Inc., 460 N.J. Super. 123, 138 (App. Div. 2019) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We, however, review a trial court's denial of a motion for reconsideration for abuse of discretion. Kornbleuth v. Westover, 241 N.J. 289, 301 (2020). See also Cummings v. Bahr, 295 N.J. Super 374, 389 (App. Div. 1996). We note

A-0327-24

that "[a] court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." R.Y., 242 N.J. at 65 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

III.

We first address Robinson's argument the court erred in granting summary judgment as the standard was not met. More particularly, Robinson contends the motion court erred in failing to consider her late-served documents, including "more than 1,000 documents produced in response to [d]efendants' requests" and finding she failed to demonstrate a triable issue of material fact. Robinson alleged defendants discriminated and retaliated against her based on

12

protected characteristics, including failing to provide increases in salary, denying staff support, and ultimately pursuing tenure charges against her.

As a preliminary matter, we recognize the gravamen of Robinson's argument that had the court considered the late-served discovery, she would have met her burden of establishing genuine issues of material fact sufficient to defeat the motion.[9] Stated differently, she asserts that had "counsel been able to complete discovery, [she] would have been able to demonstrate the missing elements that would have prevented the granting of the motion for summary judgment." This argument, however, is without merit since at the time of the motion hearing, the court did not have the benefit of the additional discovery, only a log referencing the documents, some of which were only provided at the time of the motion for reconsideration. The documents generally consist of Robinson's formal HR complaint forms, alleging she was underpaid; email communications between Robinson, Director Walker and Superintendent Fernandez regarding ongoing vacancies in the business office; and emails expressing her frustration with the current staffing levels in her office and being excluded from meetings. Having reviewed the entirety of the record before us

---

[9] Robinson also asserts poor representation and attorney neglect resulted in the dismissal of her case and we are obligated to review the dismissal of her complaint on the merits.

A-0327-24

the late-served documents proved insufficient to demonstrate Robinson established a prima facie case of discrimination under the LAD, or CEPA and thus summary judgment was warranted.

Because Robinson's claims are rooted in allegations of discriminatory disparate treatment, it is her burden to establish a prima facie case showing by a preponderance of the evidence, that she:  (1) belongs to a protected class; (2) applied and was qualified for an employment position sought by the employer; (3) was rejected or otherwise treated adversely despite adequate qualifications; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.  See Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210 (1999); Erickson v. Marsh & McLennan Co., 117 N.J. 539, 550 (1990).

Once a prima facie case is established, a presumption of discrimination arises and the burden then shifts to defendants to show a "legitimate, non-discriminatory reason" for its employment action.  McDonnell Douglas, 411 U.S. at 802; see also Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005). Plaintiffs must then show that this reason is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804.

A-0327-24

Here, we accept Robinson's arguments with respect to the first three prongs of the prima facie test but are not persuaded she satisfied the fourth prong that she was the victim of an adverse employment action.

"[T]here is no bright-line rule defining an adverse employment action in the context of a LAD claim. New Jersey has been guided by the federal courts' interpretation of Title VII and civil rights legislation to decide what constitutes an adverse employment decision with regards to a LAD retaliation claim." Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 417 (App. Div. 2019). "The factors to be considered include an 'employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees.'" Ibid. (quoting Mancini v. Twp. of Teaneck, 349 N.J. Super. 527 (App. Div. 2002)).

Although Robinson asserts that she was unable to hire staff, which we glean she urges us to consider as a diminution in authority, she does not support her argument with any details concerning her staffing needs or sufficiently address who she sought to hire and the stated reason why her requests were not met. Additionally, the record shows Robinson never returned to work—after December 13, 2021—yet, she received full compensation and benefits consistent with the terms of her contract for the duration of her leave. Under these

15

circumstances, Robinson cannot establish an adverse employment action occurred even with the benefit of the additional discovery, as there is nothing in the record to refute that she did not suffer a demotion, separation, or diminution in authority.

Similarly, Robinson also claims she was subjected to retaliation under the LAD as a result of engaging in protected activity. The prima facie elements of a retaliation claim under the LAD requires plaintiff to demonstrate that: (1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence. Victor v. State, 203 N.J. 383, 409 (2010) (citing Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)).

Here, as with her previous claims, Robinson fails to establish that she was subjected to an adverse employment action. As we have previously stated in this opinion, Robinson's allegations as stated in her complaint are conclusory and speculative and thus insufficient to defeat summary judgment. See Fusco v. Bd. of Edu. of City of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002). Rule 4:46-5 (requiring more from a non-movant in a summary judgment

16

proceeding than mere speculation and conclusory statements). Robinson also does not establish a causal link between any claimed protected activity and adverse employment consequence under the fourth prong of the LAD. Thus, even if discovery was timely served and in viewing the competent evidentiary materials in a light most favorable to plaintiffs, and construing all inferences in their favor, no rational jury could find that Robinson established a prima facie case under the LAD.

Robinson's CEPA claim suffers from the same malady as the other counts in her complaint as she cannot establish an adverse employment action occurred resulting from her confrontation with Superintendent Fernandez.

Under CEPA, Robinson must establish:

1. That she reasonably believes that her employer's conduct was violating either a law, or regulation promulgated pursuant to law;

2. [T]hat she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(a);

3. [T]hat an adverse employment action was taken against her; and

4. [T]hat a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)

17

(citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).]

It is unclear from the record whether Robinson engaged in any of the enumerated whistle-blowing activities as she has not shown proof of an activity reasonably believed to be in violation of a rule, law, or against public policy. Robinson asserts that "she complained in writing because Superintendent Fernandez was attempting to pay additional monies to a vendor for services that the vendor could not render," and to JCBOE counsel regarding the administration's "sanctioned practice of selling sick days to non-retiring employees in violation of N.J.S.A. 18A:30-3.5." She avers that "[t]hose alleged facts would establish the misappropriation of public funds and would certainly enable [her] to have formed a reasonable belief that a law or regulation had been violated."

The State contends Robinson's claims of race and gender discrimination as a result of filing internal complaints must fail because she "has not offered any evidence whatsoever other than mere speculation and most importantly, has offered no evidence to even raise a genuine issue of fact to support her claim that an adverse employment action was taken against her in retaliation for filing those complaint."

18

N.J.S.A. 18A:30-3.5 addresses payment for accumulated sick leave by a board of education. It provides in pertinent part:

> [A] board of education, or an agency or instrumentality thereof, shall not pay supplemental compensation to any officer or employee for accumulated unused sick leave in an amount in excess of $15,000. . . .
>
> Supplemental compensation shall be payable only at the time of retirement from a State-administered or locally administered retirement system based on the leave credited on the date of retirement.
>
> [N.J.S.A. 18A:30-3.5.]

Robinson contends only that sick days "were being sold to employees who were not retiring from [the JCBOE] employment," and that defendants have retaliated against her for this complaint. Although she alleges violations concerning sick leave payments and vendor contracts, she does not point to any proofs that she disclosed or threatened to disclose unlawful conduct, nor does she identify any specific retaliatory action taken against her as a consequence. She was not terminated, demoted, or suspended following her complaints, and she continued to receive all contractual pay and benefits while on leave. Without competent evidence of adverse action or a causal link to any protected activity, her CEPA claim cannot survive summary judgment. Against this backdrop, the

A-0327-24

court did not err in concluding defendants were entitled to summary judgment as a matter of law.

We further note that although Robinson asserts her compensation fell below those of her peers in other districts, however, she does not support this claim of discrimination with any proof tying her compensation to her race or gender. Rather, in her complaint, Robinson merely alleges that she was compensated at a lower rate than her male, Latino predecessor. She further argues the JCBOE failed to approve any salary adjustment following her written complaint about her salary in June 2021 wherein she provided a spreadsheet showing the salaries of other business administrators in other districts throughout the State. She does not state the salary of her former counterpart, his qualifications or experience in order to show disparate treatment.

Moreover, under N.J.S.A. 18A:17-14.1, the salary of business administrators is fixed by the employee's own Board and Robinson was compensated pursuant to her multi-year contract with the JCBOE and there is no claim the JCBOE breached the terms of her contract or compensated her less because of her race and gender. We therefore reject Robinson's contention the court erred in granting summary judgment on her LAD claim based on pay disparity claims.

Because we conclude the court properly granted summary judgment on the record before it, we reject plaintiffs' contention the court erred in denying reconsideration.

Robinson maintains she "moved for reconsideration to place the key documents before [the court]," which are addressed in her certification and attached exhibits.[10] She maintains the court erred in granting summary judgment because the complaint and over one thousand documents provided in response to defendants' discovery demands sufficiently alleges and demonstrates discrimination. In her certification, Robinson recounts the history of her complaints from June 2021 and alleged retaliatory actions by Rivera, including mistreatment and persistent understaffing of her department and exclusion from human resources meetings. She maintains that "repeatedly failing to provide [her] with the resources necessary to do [her] job and run the [b]usiness [o]ffice is an adverse employment action, and [she is] convinced that [her] predecessor, a Latino male, would have been treated differently and better."

---

[10] Robinson further maintains that because all the documents placed before the court had been in the possession of the School District since 2022 or earlier, there was no prejudice to the defendants should the court considers them, in the interest of justice.

Though brief, the court addressed the motion for reconsideration under Rule 4:49-2 and found plaintiffs failed to state with specificity the basis on which they believe the court relied upon "plainly incorrect reasoning or [failed] to consider evidence or a good reason for the court to reconsider new information." Kornbleuth v. Westover, 241 N.J. 289, 301-02 (2020). We will not disturb a court's decision for reconsideration unless it represents an abuse of discretion where "a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (citing Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2014)). Moreover, the late-served documents add little to establish the prima facie case of discrimination under the LAD and CEPA. Accordingly, we perceive no abuse of discretion on the part of the court in denying reconsideration under Rule 4:49-2.

In sum, Robinson's claims, even viewed in the light most favorable to her, fail to present genuine issues of material fact under either the LAD or CEPA. She has not produced competent evidence of an adverse employment action or connected alleged mistreatment to any protected characteristic or activity. Her claims of pay disparity and understaffing are unsupported by the record and do

22

not rise to the level of actionable discrimination or retaliation. The trial court committed no error in granting summary judgment or denying reconsideration.

Affirmed the orders granting summary judgment in defendants' favor and denying plaintiffs' motion for reconsideration.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division