**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3712-18T3

HOWARD KREBS,

    Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF
UNION COUNTY COLLEGE,

    Defendant-Respondent.

_____

Submitted March 25, 2020 – Decided June 23, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2226-16.

Goldman Davis Krumholz & Dillon, PC, attorneys for appellant (Evan L. Goldman and Kristen Ragon, on the briefs).

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for respondent (Micci J. Weiss, on the brief).

PER CURIAM

Plaintiff Howard Krebs appeals from a March 13, 2019 order granting summary judgment to defendant Union County College (UCC) and dismissing plaintiff's disability discrimination complaint with prejudice and an April 26, 2019 order denying reconsideration. We affirm.

We glean the following facts from the summary judgment record. In August 2004, defendant hired plaintiff as a student service specialist, to advise students seeking career advice, and develop programs to address student retention goals. In December 2014, plaintiff was diagnosed with Type-I Diabetes, which rendered him insulin dependent. Plaintiff took short-term disability leave in August 2015. In October 2015, when he exhausted all his sick leave and was cleared to work full-time without restrictions, he returned to work. At work, plaintiff used an insulin pump to monitor his glucose levels and deliver insulin.

After his return to work, plaintiff's attendance became inconsistent. Within a few weeks, Robert Case, Associate Director of Advising, Career, and Transfer Department, gave plaintiff a verbal warning and placed him on a two-week review to monitor his attendance. In December 2015, Heather Keith, Director of the Advising, Career, and Transfer Department, sent plaintiff a First Written Warning for "excessive absences." The warning noted: "Since our

2 <span>A-3712-18T3</span>

[verbal warning] on 11/9/15, you have . . . been absent from work on 11/17 [and] 12/3 sick, and 12/2 half day emergency vacation. Furthermore, as reported by the floor manager, you disappear from the floor for extended periods of time throughout the day." Keith advised plaintiff that failure to improve would result in further disciplinary action up to and including discharge. On that same day, Donnell K. Clement, manager of the UCC Elizabeth Campus, suggested plaintiff separate his lunch break into two separate parts–two thirty-minute breaks–so plaintiff could better manage his medical condition.

On March 3, 2016, Keith sent plaintiff a First Written Warning for Tardiness, asserting that from December 15, 2015 through February 17, 2016, plaintiff was late to work on thirteen days. On March 11, 2016, Case sent plaintiff a Written Warning for "Poor Performance and Insubordination" because plaintiff's management of his caseload continued to be at an unacceptable level and his work was not submitted in a timely manner.

Approximately two weeks later, on March 24, 2016, Case sent plaintiff a Final Written Warning with a three-day suspension because plaintiff: was absent for three days, late on four days, and left early on three days in March 2016; his performance continued to decline; and he did not respond to the associate director's multiple requests for responses.

A-3712-18T3

On April 4, 2016, plaintiff, through counsel, formally demanded that the parties initiate the "'interactive process'" and requested a meeting to address the issue of reasonably accommodating plaintiff's disability status. The interactive process had begun in a meeting on December 4, 2015 where plaintiff was informed that if he needed an accommodation, he should consult a medical professional and convey such information to defendant.

On April 14, 2016, the parties attended an interactive process meeting. As a result of the meeting, Human Resources acknowledged, by letter dated April 18, 2016, defendant was

> able to continue accommodating two . . . half an hour lunch breaks daily. In addition, we are able to accommodate up to two . . . fifteen minute breaks during the day per your request to take care of your personal needs with medical certification from your doctor stating this need.
>
> Currently you are working three . . . days per week from 11:30am-7:30pm and two . . . days per week from 8:30am-4:30pm. We would be willing to permanently change your hours to five . . . days per week from 11:30am-7:30pm if this will help your situation.
>
> As of the date of this letter, you are expected to be on time for your shift and perform the functions outlined in your job description which was presented to you at the meeting. If you continue to be late or absent, insubordinate, and not perform, it will result in further disciplinary action up to and including termination.

4

However, on April 21, 2016, Vincent Lotano, defendant's Director of Human Resources, reminded plaintiff "[t]o be clear, the accommodations previously discussed and recorded during the interactive process cannot be considered for approval without sufficient medical documentation. Submit your medical provider report to me by April 28, 2016."

Plaintiff never provided the medical certification by the imposed deadline and on April 29, 2016, he was terminated from his employment "for repeated poor performance, poor attendance, excessive tardiness, and insubordination." Plaintiff filed a complaint against defendant alleging violations under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, on the basis of his disability. Following discovery, defendant filed a motion for summary judgment.

The court heard argument on defendant's motion and on March 13, 2019, granted summary judgment and dismissed the entirety of plaintiff's complaint with prejudice. Plaintiff moved for reconsideration which was denied.

This appeal followed.

We review rulings on a motion for summary judgment de novo. Richter v. Oakland Bd. of Educ., 459 N.J. Super. 400, 412 (App. Div. 2019) (citation omitted). We view the competent evidential materials presented in a light most

favorable to the non-moving party, according him all favorable inferences and affirming summary judgment only if the facts present no genuine issue for trial. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citation omitted).

On appeal, plaintiff asserts the court erred granting summary judgment in favor of defendant and dismissing his claim for disability discrimination under the LAD. Specifically, plaintiff asserts the court: (1) did not correctly apply the standard to determine whether plaintiff established a prima facie case of discrimination or failure to accommodate; (2) contravened established case law by finding plaintiff's absenteeism excessive, as such an inquiry is better left for a jury; and (3) ignored critical evidence illustrating that defendant failed to engage in the interactive process.

The LAD prohibits an employer from terminating a disabled employee because of his or her disability "unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1. To establish a prima facie case of disability discrimination in a termination context, plaintiff must demonstrate by a preponderance of evidence that: (1) he was disabled within the meaning of the LAD; (2) he was performing his job at a level which met defendant's legitimate expectations; (3) he was

6

discharged; and (4) the defendant sought someone to perform the same work after he left. Grande v. St. Clare's Health Sys., 230 N.J. 1, 17-18 (2017). A disability discrimination case alleging a failure to accommodate an employee's disability, requires proof on only the first three elements of a prima facie discrimination claim. Victor v. State, 401 N.J. Super. 596, 610 (App. Div. 2008); Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 91 (App. Div. 2001).

If a plaintiff succeeds in establishing a prima facie case, "a presumption arises that the employer unlawfully discriminated against the plaintiff." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988). "The analysis then proceeds to the second step of the test, where 'the employer's burden varies depending on whether the employer seeks to establish the reasonableness of the otherwise discriminatory act or advances a non-discriminatory reason for the employee's discharge.'" Grande, 230 N.J. at 18-19 (quoting Jansen v. Good Circus Supermarkets, Inc., 110 N.J.363, 382 (1988)).

If the employer asserts, as here, it has a non-discriminatory reason for the discharge, the burden of production shifts to the employer. Id. at 19. "The employee may [then] respond by proving by a preponderance of the evidence that the reason proffered by the employer 'was not the true reason for the

employment decision but merely a pretext for discrimination.'" Ibid. (quoting Jansen, 110 N.J. at 382-83). The burden of proving intentional discrimination always remains with the employee. Ibid.

Here, the second prima facie element, whether plaintiff was performing his job at a level which met defendant's legitimate expectations, is in dispute. In analyzing this element, we consider whether a plaintiff was able to perform the essential functions of the position with a reasonable accommodation. The Grande Court explained that a plaintiff may satisfy the second element of the prima facie case "by putting forth evidence either that [he] was actually performing [his] job or was able, with or without reasonable accommodation, to perform [his] job to [his] employer's legitimate expectations." Grande, 230 N.J. at 21. "Procedurally, courts have recognized that the prima facie case is to be evaluated solely on the basis of the evidence presented by the plaintiff, irrespective of defendant's efforts to dispute the evidence." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 448 (2003).

Defendant argues plaintiff never established this second prong because his absenteeism rendered him unqualified for the position and defendant had no duty to accommodate such absenteeism. See Svarnas v. AT&T Commc'ns, 326 N.J. Super. 59 (App. Div. 1999). In addition, defendant asserts that plaintiff was

advised that he would be terminated if he showed no improvement in his poor attendance, excessive tardiness, poor performance, and insubordination.

In Svarnas, an employee who suffered from asthma and bodily injuries after a car accident was "absent from the office more than 600 days in a twenty-two-year period. . . ." 326 N.J. Super. at 80. The employer terminated the employee for excessive absenteeism. Id. at 63. The employee sued the company under the LAD, asserting discrimination based on her asthma condition and her bodily injuries. Ibid. The employee alleged that her absenteeism was merely a pretext for the company's unwillingness to accommodate her part-time work schedule and desire for a smoke-free work environment. Ibid.

The trial court granted summary judgment for the employer finding that no accommodation was required because plaintiff was not otherwise qualified to do her work. Id. at 72. Because plaintiff had been out of work unpredictably and for a variety of medical reasons, plaintiff "could not be so qualified because she was not there." Id. at 72. We affirmed noting that "plaintiff had been warned about her sporadic, unpredictable, chronic, and excessive absenteeism for at least eight years prior to termination." Id. at 77. We stated "reasonably regular, reliable, and predictable attendance is a necessary element of most jobs," and

that "an employee who does not come to work cannot perform any of her job functions, essential or otherwise." Id. at 78.

By way of contrast, in Grande, the Court found the modest burden to withstand summary judgment as to the second prong was met. 230 N.J. at 26. In that case, the plaintiff suffered a series of work-related injuries and spent four months recovering from surgery before returning to work full duty. Id. at 8. Although plaintiff's doctor cleared her to resume full-duty work, her employer stated she would have to undergo physical testing before returning to full duty. Id. at 9. The results of the testing revealed the plaintiff would have permanent lifting restrictions and her employer terminated her stating that the limitation would prevent her from doing her job. Id. at 11-12.

Grande's employer argued, among other things, that she failed to satisfy the second element of the prima facie case because her lengthy absences were proof that she was not performing her job. Id. at 24-25. The Court acknowledged that the plaintiff worked for defendant for ten years and was never warned that her job was at risk, however, the court also noted that the plaintiff "was absent for over twelve months due to her injuries, worked about two months on light duty assignment, and was on light duty, concededly at the hospital's request, at the time she was fired." Ibid. Nevertheless, the Court

found that the modest burden to withstand summary judgment as to the second prong had been met and stated an issue of fact existed as to whether plaintiff's "periods of absence from work were sufficiently 'chronic and excessive,'" to prevent her from illustrating that she was performing the job when she was terminated. Id. at 26.

Here, the trial court correctly determined that plaintiff failed to establish the second prong of his prima facie case. While neither Svarnas nor Grande directly mirror the facts of this case, Svarnas is more instructive. In Svarnas, we determined the employee was not qualified because she had excessive absenteeism despite being notified that her attendance was an issue and could lead to termination. Plaintiff here was also absent on numerous occasions and his overall attendance was not "reasonably regular, reliable, and predictable" despite being notified through various warnings that he could be terminated if he showed no improvement. Notably, plaintiff does not dispute that his job required him to be in the office as his position required consistent interaction with students.[1]

---

[1] As noted above, defendant articulated multiple reasons for terminating plaintiff including repeated poor performance, poor attendance, excessive tardiness, and insubordination. The trial court only relied on plaintiff's absenteeism for the proposition that he was unqualified. It is worth noting that

Moreover, plaintiff's failure to actively engage in the interactive process is fatal to his disability discrimination claim under the LAD.

The New Jersey Administrative Code (Code) states the role of an employer in guaranteeing that a disabled person is not disadvantaged in the workplace. Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 421 (App. Div. 2001). The Code requires employers "consider the possibility of reasonable accommodation before firing, demoting, or refusing to hire or promote a person with a disability on the grounds that his or her disability precludes job performance." N.J.A.C. 13:13-2.5(b)(2). We adopted the standard for the informal interactive process set forth in federal regulations in Tyan v. Vicinage

_____

a large portion of plaintiff's attendance issues, since returning from leave, stemmed from tardiness rather than absenteeism. We have found that a modified work schedule, in certain circumstances, is a reasonable accommodation, whereas, excessive absenteeism need not be accommodated even if caused by a disability under the act. Compare Jones v. Aluminum Shapes, 339 N.J. Super. 412, 421 (App. Div. 2001) (noting that N.J.A.C. 13:13-2.5 states under certain circumstances modified work schedules are reasonable accommodations); with Svarnas, 326 N.J. Super. at 77 (noting that there is no way to reasonably accommodate the unpredictable aspect of an employee's sporadic absences even if the employee is using time allotted to her, and even if the absences are disability related.). Nevertheless, on balance, we note plaintiff was on notice that his attendance issues were an issue that could lead to termination, he was accommodated, was given chances to fix this behavior, and his overall attendance (tardiness, absenteeism, and leaving early) was unpredictable. Additionally, plaintiff's attendance issues were further compounded by his inability to help in facilitating the interactive process.

13 of Superior Court of N.J., 351 N.J. Super. 385, 400-01 (App. Div. 2002), where we stated

> To determine what appropriate accommodation is necessary, the employer must initiate an informal interactive process with the employee. . . . This process must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability. . . . Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation.

A plaintiff arguing that an employer failed to participate in the interactive process bears the burden of demonstrating:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [his] disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have reasonably accommodated but for the employer's lack of good faith.
>
> [Tyan, 351 N.J. Super. at 400-01.]

While it is beyond cavil that the LAD requires employers to make good faith efforts in assisting disabled employees in seeking accommodations, id. at 401, employees must also engage in the interactive process. See Potente v. Cty. of Hudson, 187 N.J. 103, 111 (2006) ("[A]n employee cannot refuse to cooperate with an employer's efforts to accommodate his disability and then claim failure

A-3712-18T3

to accommodate."); see also Mengine v. Runyon, 114 F.3d 415, 420 (3d. Cir. 1997) (finding under the reasonable accommodation requirement of the Rehabilitation Act of 1973 "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.").

We reject plaintiff's argument that the interactive process failed because of defendant. Defendant provided accommodations to plaintiff, defendant had no duty to accommodate plaintiff's absenteeism or tardiness, and plaintiff failed to keep them updated as to the status of his medical certification—information which was needed to determine how the additional proposed accommodations would have remedied plaintiff's tardiness and absenteeism.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3712-18T3